| | |
|---|---|
| PHILIP BENHAM, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **PLAINTIFF'S RESPONSE IN** ) **OPPOSITION TO DEFENDANT'S** ) **MOTION TO STAY OR ABSTAIN** |
| CITY OF CHARLOTTE, | ) ) |
| Defendant. | ) ) |

Plaintiff, Philip Benham, through counsel, submits this response in opposition to Defendant, City of Charlotte's ("the City") motion to stay or abstain (Doc. No. 5). The City's motion should be denied. First, the City is mistaken in its premise that the two actions—this action and the state court petition of certiorari—are duplicative. They are not. This action directly challenges the constitutionality of the City's picketing ordinance both facially and as applied and seeks emergency preliminary injunctive relief, as well as damages. The petition for certiorari seeks primarily to reverse the Assistant City Manager's decision in the quasi-judicial hearing upholding the citation. Second, the City is mistaken on the law. This action is not solely a declaratory judgment case. As such, the broad discretion afforded a district court to stay or dismiss does not apply, and this Court has an obligation to exercise jurisdiction and determine the merits. This Court should therefore deny the motion, retain jurisdiction, and allow the case to proceed.

**Factual and Procedural Background**

Mr. Benham is a pro-life advocate who routinely stands on the public sidewalk outside the abortion facility known as A Preferred Women's Health Center located at 3220 Latrobe

Drive, Charlotte, NC in order to offer pro-life literature to people entering and exiting the facility. (Doc. No. 1, Ex. 1 at ¶¶ 8- 9. On November 6, 2024, he was cited for violation of the City's Picketing Ordinance (the "Ordinance"), Section 19-303(c). *Id*. at ¶ 19. That subsection states: "Picketing shall not disrupt, block, obstruct or interfere with pedestrian or vehicular traffic or the free passage of pedestrian or vehicular traffic into any driveway, pedestrian entrance, or other access to buildings, which abut the public sidewalks."

Pursuant to City Code, Article II, Section 2-25, Mr. Benham's timely appeal of his civil penalty was heard on March 28, 2025 "by a hearing officer through a quasi-judicial process." *Id*. at subsection (c). The rules for conducting the hearing are set by the City Manager. *Id*. Those rules do not allow for depositions, are not governed by the rules of evidence, and do not contemplate discovery. Mr. Benham's hearing was conducted by the Assistant City Manager.

The Assistant City Manager upheld Mr. Benham's alleged violation of the Ordinance by letter decision dated May 12, 2025.[1] On June 12, 2025, having encountered technical difficulties in filing on June 11, Mr. Benham filed both the petition for certiorari and the instant complaint. Contrary to the City's assertion that the petition was filed first, the actions were filed virtually simultaneously. (The notices of filing reflect a difference of seven (7) minutes. (*See* Exhibits 1 and 2, attached hereto.) On July 15, 2025, the City filed its Notice of Removal. (Doc. No. 1). On July 22, 2025, the City filed the instant motion to stay or abstain. (Doc. No. 5).[2]

**Argument**

The City argues that the petition for certiorari and this Complaint are "duplicative actions" that seek "nearly identical relief," including a declaratory judgment. (Doc. No. 6, p. 1).

---

[1] The letter states that it was sent by certified mail. It therefore could not have been received before March 13, 2025, at the earliest.
[2] The City filed its motion without having first conferred with Benham's counsel, in apparent violation of LCvR 7.1(b).

2

On that basis, the City seeks a stay or abstention from this Court in order to allow the "parallel" state court proceeding to be resolved first. *Id*. The City is mistaken both on the facts and on the law. Accordingly, the motion should be denied.

I. **This Complaint Seeks Different Relief than the Petition for Certiorari, Including a Preliminary Injunction.**

    A. **The Petition seeks primarily a reversal of the decision upholding the citation**.

While it is true that Benham included mention of the unconstitutionality of the Ordinance in his petition for certiorari, the petition contains a single claim for relief, seeking review and reversal of the Assistant City Manager's decision upholding the citation. As stated in paragraph 24, under FIRST CLAIM FOR RELIEF (Petition for Writ of Certiorari):

> Petitioner hereby petitions for a writ of certiorari to review the City Manager's decision, which has prejudiced his rights through the upholding of a fine assessed against him, and here challenges the findings, inferences, conclusions, and/or decisions of the City Manager, including but not limited to, Findings of Fact Nos. 10 through 14 and Conclusion of Law Nos. 2 and 3.

(Doc. No. 6-2, at ¶ 24). The unconstitutionality of the Ordinance is provided as another reason to "reverse, vacate, and/or otherwise modify, as appropriate, the decision of the City Manager in upholding the citation for alleged violation of the picketing ordinance. . . ." *Id*. at ¶ 30.

Furthermore, by statute, a petition for certiorari to the Superior Court directs that "[t]he court shall hear and decide a*ll issues raised by the petition* by reviewing *the record* submitted in accordance with subsection (h) of this section." G.S. 160D-1402(i) (emphasis added). The record consists of "the decision and all documents and exhibits submitted to the decision-making board whose decision is being appealed," together with the minutes of the proceeding. *Id*. at subsec. (h). These factors underscore the fact that a petition for certiorari is narrowly focused on review and possible reversal of the "quasijudicial" hearing and decision below.

3

### B. The Complaint seeks injunctive relief and damages.

In stark contrast to the narrow focus of the petition for certiorari, the complaint in this action is far broader, containing three causes of action, only one of which seeks a declaratory judgment. The Second Claim for Relief ("Declaratory and Other Relief: Facial and As Applied Unconstitutionality under the United States and North Carolina Constitutions") directly and unambiguously asks this Court to decide the constitutionality of the City's Ordinance both facially and as applied. Paragraph 32 asserts: "Both facially and as applied, the City's picketing ordinance violates several provisions of the United States and North Carolina constitutions, including provisions that recognize specifically enumerated rights such as the right to free speech, free exercise of religion, and the right to assemble peaceably." Doc. No. 1, Ex. 1. Paragraph 39 also includes a claim for damages. *Id*.

The Third Claim for Relief ("Request for Preliminary and Permanent Injunctions") explains that enforcement of the Ordinance "substantially impairs the ability of Plaintiff to exercise his constitutionally protected rights." *Id*. at ¶ 41. Paragraph 42 states: "Great and irreparable harm will be suffered by Plaintiff without an injunction." *Id*. at ¶ 42. Finally, paragraph 44 "prays for preliminary and permanent injunctive relief enjoining enforcement of the picketing by the City." *Id*. at ¶ 44. Far from raising mere issues of state law, Benham's Complaint pleads irreparable harm necessitating emergency injunctive relief. It is not a simple declaratory judgment case by any means.

### C. The City's authorities are predicated upon declaratory judgment actions alone and are therefore inapposite.

In support of its argument, the City first cites *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). (Doc. No. 6, p. 1). Tellingly, however, the City mischaracterizes *Wilton,* claiming it stands for the proposition that "federal courts have discretion to stay actions pending resolution

4

of parallel state actions." *Id*. In truth, federal courts have such discretion *only in declaratory judgment actions*. In a case like this one that raises other claims, federal courts have a solemn obligation to decide the issues before them.

*Wilton* was a classic declaratory judgment action based upon diversity jurisdiction. *Wilton*, 515 U.S. at 280. The City next cites *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir. 1992), (Doc. No. 6, pp. 1-2), which was yet another declaratory judgment action based on diversity jurisdiction. *Id*. at 236. Unlike this case, neither *Wilton* nor *Mitcheson* raised any federal question, let alone a request for emergency injunctive relief. They are therefore inapposite.

Nevertheless, these cases do shed light on the legal principles that apply. The issue before the Court in *Wilton* was "whether the discretionary standard set forth in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), or the 'exceptional circumstances' test developed in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp*., 460 U.S. 1 (1983), governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state court proceedings . . ." *Wilton*, 515 U.S. at 279. In the declaratory judgment context, of course, the *Brillhart* standard applies.

A unanimous Supreme Court held in *Wilton* that the District Court's stay of the federal proceedings to allow a state court action which "encompassed the same [insurance] coverage issues" to proceed was not an abuse of discretion. *Id*. at 282. The Court reasoned that the Declaratory Judgment Act, 28 U.S.C. § 2201, on its face provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration." *Wilton*, 515 U.S. at 286 (emphasis in original); *accord*, *Mitcheson*, 955 F.2d at 237. It further observed:

5

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id*.

As the Fourth Circuit recognized in *Mitcheson* when considering the same Act, one of the primary reasons for staying or dismissing a federal diversity case when a parallel state case has been filed is "the state's interest in deciding questions of state law." *Mitcheson*, 955 F.2d at 237 (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, (1938)). After all, "[a]s was well established by *Erie* and its progeny, state law ordinarily provides the rule of decision in pure diversity cases." *Id.* The Supreme Court echoed this unsurprising principle in *Wilton*: "*Brillhart* indicated that, at least where another suit involving the same parties and presenting opportunity for ventilation of *the same state law issues* is pending in state court, a district court might be indulging in '[g]ratuitous interference,' *ibid*., if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (emphasis added). No such question of state law is presented here. Rather, the primary issue raised in this case is a quintessential federal issue: whether the City's Picketing Ordinance comports with the requirements of the First Amendment.

**II.     Where, as Here, the Declaratory Judgment Act does not Control, it is the Duty of the Court to Exercise its Jurisdiction and Decide the Matter Before It.**

While it is well settled that in a declaratory judgment action a district court has broad discretion to decide whether to hear the case, a different rule applies where, as here, other claims are presented. Under these circumstances the court is under a strict obligation to hear the matter absent exceptional circumstances.

**A. Absent "exceptional circumstances" not present here, it is the obligation of the Court to exercise its jurisdiction.**

The City's own authorities establish beyond cavil that this Court should exercise its jurisdiction and deny the City's motion. In *Wilton*, the losing party argued that the "exceptional

circumstances" test should govern even in a declaratory judgment action, and that the relaxed standard articulated by *Brillhart* no longer applied. *Wilton*, 515 U.S. at 283. In addressing this argument, the Court examined intervening precedent, including *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978), and *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). *Colorado River* raised federal claims involving water rights. The Court "began with the premise that federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *Wilton*, 515 U.S. at 284 (quoting *Colorado River*, 424 U.S. at 813, 817-18). Nonetheless, a court could abstain in "exceptional circumstances," and, in *Colorado River*, the Court found such exceptional circumstances to exist where there was

> a clear federal policy against piecemeal adjudication of water rights; the existence of an elaborate state scheme for resolution of such claims; the absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss; the extensive nature of the suit; the 300–mile distance between the District Court and the situs of the water district at issue; and the prior participation of the Federal Government in related state proceedings.

*Wilton*, 515 U.S. at 284.

Two years after *Colorado River*, the Court decided *Will v. Calvert Fire Ins. Co. Will* involved "an alleged violation of federal securities laws brought in federal court during the pendency of related state proceedings." *Wilton*, 515 U.S. at 285. In that case, over a strong dissent, a plurality of the Court applied the relaxed *Brillhart* standard to a district court decision to defer to the state court proceeding. *Id.*

But *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, decided five years after *Will*, squarely rejected such a rule. In a 6-3 decision, the Court concluded that "[t]he plurality's suggestion in *Will* that *Brillhart* might have application beyond the context of declaratory

7

judgments was rejected by the Court." *Wilton*, 515 U.S. at 285.[3] *Moses H.* involved a suit to compel arbitration. As the *Wilton* Court explained, *Moses H.* held that "the *Colorado River* 'exceptional circumstances' test, rather than the more permissive *Brillhart* analysis," governed outside the declaratory judgment context. *Id.* Outside the narrow confines of a pure declaratory judgment action, the rule is thus firmly established: "'Abdication of the obligation to decide cases, . . . can be justified . . . *only* in the exceptional circumstance where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'" *Id.* at 285 (quoting *Moses H.*, 460 U.S. at 14) (emphasis added). That is the applicable rule here.

The City's second case, *Mitcheson v. Harris*, also recognized this distinction between declaratory judgment cases and those that raise other federal claims:

> The obligation of the federal judiciary to resolve all questions within its jurisdiction absent special circumstances, *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), must thus be qualified in a declaratory action. Indeed, the Third Circuit has stated that "by the terms of the Declaratory Judgment Act itself, a fundamental reason for the exceptional nature of a *Colorado River* stay—the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,'—is not present in declaratory judgment cases." *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1222 (3d Cir.1989) (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246); *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 n. 1 (5th Cir.1983) (statute, not exceptional circumstances test, controls exercise of discretion in declaratory actions); *Allstate Ins. Co. v. Best*, 728 F.Supp. 1263, 1269 (D.S.C.1990) (in deciding questions of state law in declaratory action, there exists "no federal interest whatsoever in their ultimate resolution"). In other words, *in declaratory actions Congress has afforded the federal courts a freedom not present in ordinary diversity suits* to consider the state interest in having state courts determine questions of state law.

*Mitcheson*, 955 F.2d at 237–38 (emphasis added). The City's other authorities are no different. Both *VRCompliance LLC v. HomeAway, Inc.*, 715 F.3d 570 (4th Cir. 2013), cited in the City's

---

[3] The *Wilton* Court noted that *Moses H.* clarified that because "the combination of Justice Blackmun [who had concurred in the judgment] and the four dissenting Justices in *Will* had made five to require application of *Colorado River*, the Court rejected the argument that *Will* had worked any substantive changes in the law." *Id*.

Memorandum at page 4, and *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419 (4th Cir. 1998), cited in the Memorandum at page 5, were also declaratory judgment actions raising only state law claims. *See VRCompliance*, 715 F.3d at 573; *Aetna*, 139 F.3d at 421. Contrary to the City's assertion, then, *Mitcheson* is wholly consistent with Benham's position. The *Colorado River* "exceptional circumstances" test governs here, and the City's motion should be denied.[4]

Additionally, the Fourth Circuit has recognized that "'[t]he rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). In *vonRosenberg*, the District Court initially abstained from exercising jurisdiction in favor of related state court proceedings, applying *Wilton* and *Brillhart*. *vonRosenberg*, 849 F.3d at 165. On appeal, however, the Fourth Circuit reversed. The Fourth Circuit held that "*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), not *Brillhart* and *Wilton*, governs abstention decisions in actions where the plaintiff seeks both declaratory and nondeclaratory relief." *Id*.

Moreover, the Fourth Circuit has also recognized that even in a declaratory judgment action a district court should usually exercise its jurisdiction "when it finds that the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (cleaned up). *Nautilus* also reiterated that the declaratory judgment statute "'meets a real need and should be liberally construed to accomplish the purpose intended, i.e., to afford a speedy and inexpensive method of adjudicating legal disputes without invoking the coercive

---

[4] The City does not even attempt to demonstrate the existence of such exceptional circumstances here, nor could it. There are none.

9

Case 3:25-cv-00513-SCR-DCK    Document 8    Filed 08/05/25    Page 9 of 13

remedies of the old procedure.'" *Id*. (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937)).

That is the case here. This Court's determination of the constitutionality of the City's Ordinance will provide a speedy and inexpensive method of resolving this dispute. It will both clarify and settle the legal relations between the parties and terminate and afford relief to Benham and to others not before the Court from the uncertainty, insecurity, and controversy giving rise to this case. Thus, even under the more relaxed declaratory judgment standard, this Court should hear the case.

### B. The City seeks only to delay final determination of the issues.

In addition, the City has tipped its hand as to its strategy in the event this Court were to grant its motion to stay or abstain from exercising jurisdiction. It will move to dismiss the petition for certiorari because, it claims, Benham's petition was "untimely filed," (Doc. No. 6, p. 2). Thus, having removed this case and thereby asked this Court to assume jurisdiction, the City now asks the Court to stay the matter in order to allow it to file a motion to dismiss the petition for certiorari in state court, thereby further delaying a determination on the merits. That the case would likely return to this Court in the event the petition is dismissed only underscores the fact that the City's motion is not well taken and should be denied.

### Conclusion

For all the foregoing reasons, this Court should deny the motion and allow this case to proceed.

Respectfully submitted, this 5th day of August, 2025.

/s/Jonathan A. Vogel
Jonathan A. Vogel
NC Bar No. 34266
Vogel Law Firm PLLC
6000 Fairview Road
South Park Towers, Suite 1200
Charlotte, NC 28210
704-552-3750
Email: jonathan.vogel@vogelpllc.com

and

/s/Stephen M. Crampton
Stephen M. Crampton*
Thomas More Society
P.O. Box 4506
Tupelo, MS  38803
662-255-9439
scrampton@thomasmoresociety.org

*Counsel for Philip Benham*

*Admitted pro hac vice

## CERTIFICATE OF WORD COUNT COMPLIANCE

The undersigned counsel certifies that this document does not exceed 4,500 words according to the word count feature in Microsoft Word and is therefore in compliance with the word limitation set forth in the Court's Initial Scheduling Order.

*/s/ Jonathan A. Vogel*
Jonathan A. Vogel

## CERTIFICATE OF ARTIFICAL INTELLIGENCE COMPLIANCE

The undersigned counsel certifies that (1) no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and (2) every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Jonathan A. Vogel*
Jonathan A. Vogel

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Response in Opposition to Defendant City of Charlotte's Motion to Stay or Abstain was filed via CM/ECF, which will send notice to all counsel of record.

Dated: August 5, 2025

*/s/Stephen M. Crampton*
Stephen M. Crampton